No. 44,673

STATE OF KANSAS, *Appellee,* v. ELIJAH MORRIS McCORVEY, *Appellant.*

(428 P. 2d 762)

Opinion filed June 10, 1967.

*Jim Lawing,* of Wichita, argued the cause, and *Payne H. Ratner, Louise Mattox, Payne H. Ratner, Jr., Cliff W. Ratner, R. R. Barnes* and *Edmond L. Kinch,* all of Wichita, were with him on the briefs for appellant.

*R. K. Hollingsworth,* Deputy County Attorney, of Wichita, argued the cause, and *Robert C. Londerholm,* Attorney General, and *Keith Sanborn,* County Attorney, of Wichita, were with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: The defendant, Elijah Morris McCorvey, was tried by a jury and found guilty of the crime of grand larceny (K. S. A. 21-533), and was sentenced to confinement in the Kansas State Penitentiary for a period of fifteen years pursuant to the Kansas Habitual Criminal Act. (K. S. A. 21-107a.) He has appealed from the judg-

ment and sentence and the order overruling his motion for a new trial.

The state's evidence was to the effect that McCorvey, who lived in Oklahoma City, Oklahoma, and a confederate went into Dillon's Supermarket at 1900 East Pawnee, Wichita, Kansas, on August 4, 1964, where they committed grand larceny. The evidence showed that, in the parlance of peace officers, the defendant was guilty of "till-tapping." The clerk at the check-out counter testified the defendant's confederate came to her stand to pay for two packages of cigarettes and laid a dollar bill on the counter near the cash register; that as she rang up the sale the confederate moved down to the far end of the counter where groceries are sacked, and threw out some change on the counter, mostly in pennies, stating he had the correct change to pay for the cigarettes; that the cash register remained open while she was counting the change, and while her attention was thus diverted she had the feeling there was something behind her; that she looked around and saw the defendant behind her and he had taken all of the "fives and tens" in the cash register; that no one else was standing at her check-out counter and she told the store manager, who was working in his office at the check-cashing booth a few feet away, she had been robbed; that she heard the store manager tell the defendant "to put the money down" and she then called the police.

The check-out clerk and the manager identified the defendant in open court as the man who reached into the cash register, removed the large amount of currency, and dropped it when running from the store.

Although the county attorney was aware the defendant had previously been convicted of criminal offenses similar to the crime charged, he did not offer evidence of such convictions in the state's case in chief as relevant to prove motive, intent, plan or identity of the defendant. (K. S. A. 60-455.)

At the trial, after giving proper notice, the defendant testified in support of his plea of alibi. (K. S. A. 62-1341.) Prior to the defendant taking the stand, his wife, Salette McCorvey, testified she lived with the defendant in Oklahoma City that they had been married for sixteen years and had three children; that the day before the alleged offense they had returned from a three-weeks vacation in California; that she owned a 1963 Oldsmobile and a 1962 two-tone Blue and White Ford; that on the day of the alleged offense

the defendant spent the entire day at the home of their mutual friend, Olivia Powers, in Oklahoma City; that she talked to the defendant on the telephone around noon; that he returned home about 5:30 p. m. and that she particularly remembered the day because on his arrival home the defendant told her that Loretta Calhoun, a friend of theirs, had been shot and killed in Oklahoma City at about 5:00 p. m. Her testimony was corroborated in detail by Olivia Powers.

Upon taking the witness stand, the defendant denied he was in Wichita on August 4, 1964, and testified generally to the same facts of his whereabouts on that day theretofore testified to by his wife and Olivia Powers. On cross-examination, the county attorney asked the following question:

"Now Mr. McCorvey, I would like to ask you if it is not true that in 1948, in the State of Ohio, you were . . ."

At this point, counsel for the defendant approached the bench and informed the court the state was attempting to inquire into a prior conviction which occurred in Ohio in 1948, and objected upon the grounds that K. S. A. 60-421 prohibited the testimony unless the state could show an exception thereto. The objection was overruled and the court permitted the county attorney to elicit testimony from the defendant which showed the jury he had been convicted of grand larceny in Ohio in 1948, and had served time on that conviction.

The county attorney proceeded with that line of questioning and asked the defendant if it were not true that he pleaded guilty to petty larceny at Emporia in 1960, and that the charge involved was a "till-tapping" charge. The defendant answered, "I believe that was the nature of it; a larceny charge." The county attorney inquired if it were not true that he pleaded guilty to a petty larceny charge in Norman, Oklahoma, in 1962, to which the defendant replied in the affirmative. The county attorney then inquired if it were not true that he either pleaded guilty or was convicted of the crime of petty larceny at Stillwater, Oklahoma, in 1962, to which the defendant replied in the affirmative. The county attorney further inquired if he had pleaded guilty to larceny of money in Oklahoma City in 1962, to which the defendant replied in the affirmative, and further stated:

"I don't remember that incident. It may have been in July but if you mean do I have a police record, yes. All these things you mentioned to me I have either paid for already or—I don't mind answering your questions if they have

anything to do with this, but if you are trying to establish that I have a police record—yes, I have been arrested before."

The defendant contends he did not introduce any evidence which had the sole purpose of supporting his credibility or to prove a trait of his character and that when the state failed to introduce evidence of his prior convictions of larceny and "till-tapping" in its case in chief to establish an element of the offense with which he was charged, it was prejudicial error for the district court to permit the county attorney to cross-examine him about such prior convictions after he testified in his own defense in support of his plea of alibi. He argues the state's cross-examination not only attacked his credibility and character in violation of K. S. A. 60-421 and 60-422, but with the enactment of the Uniform Rules of Evidence in 1963, the rule that when a defendant in a criminal action takes the witness stand in his own defense he thereby places his character and credibility in issue and is subject to being cross-examined with the view of impairing his credibility concerning previous offenses and subjects involving him in degradation and disgrace although they do not pertain to the charge for which he is on trial, was abolished by K. S. A. 60-421. The statute reads:

"Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his credibility. *If the witness be the accused in a criminal proceeding, no evidence of his credibility shall be admissible for the sole purpose of impairing his credibility unless he has first introduced evidence admissible solely for the purpose of supporting his credibility.*" (Emphasis supplied.)

The pertinent part of K. S. A. 60-422 reads:

"As affecting the credibility of a witness . . . (*d*) *evidence of specific instances of his conduct relevant only as tending to prove a trait of his character, shall be inadmissible.*" (Emphasis supplied.)

The defendant further argues that the procedural framework of the Uniform Rules of Evidence is here a principal element of the substantive legislative system and that the procedures prescribed create substantive rights and impose limitations upon a county attorney by requiring that he may not submit a part of the state's evidence in its case in chief and then lie in wait for the defense to place the defendant upon the witness stand to tell his side of the story, and prove the rest of the state's case through cross-examination of the defendant. He further argues that the Uniform Rules of Evidence as applied to criminal proceedings did not materially change the case law as it was developed in Kansas prior to its en-

actment and that the evidence of crimes and prior convictions of the accused when relevant to prove a material fact such as intent, plan, knowledge or identity, as now authorized by K. S. A. 60-455, was always required to be introduced in the state's case in chief, and he cites and relies upon *State v. Myrick,* 181 Kan. 1056, 1059, 317 P. 2d 485; *City of Topeka v. Harvey,* 188 Kan. 841, 365 P. 2d 1109; *State v. Wright,* 194 Kan. 271, 398 P. 2d 339; *State v. Poulos,* 196 Kan. 287, 411 P. 2d 689, cert. den. 385 U. S. 827, 17 L. Ed. 2d 64, 87 S. Ct. 63; *State v. Darling,* 197 Kan. 471, 419 P. 2d 836. K. S. A. 60-455 reads:

"Subject to section 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed another crime or civil wrong on another specified occasion *but,* subject to sections 60-445 and 60-448 *such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."* (Emphasis supplied.)

In advancing his contention, the defendant concedes that K. S. A. 60-421 does not conflict with K. S. A. 60-455, and states:

". . . This statute (K. S. A. 60-455) would have permitted the prosecutor, had he chosen to do so, to present evidence that McCorvey had on prior occasions engaged in some 'crime or civil wrong' which would have been relevant to an issue in the trial. For instance, if one of the convictions grew out of a previous instance of 'till-tapping,' a type of larceny with a definite *modus operandi,* the prosecutor could have shown that McCorvey had previously committed such an offense to prove 'opportunity,' 'intent,' 'plan,' 'knowledge,' or possibly 'identity.' Such evidence, of course, would have to be presented in the State's case in chief, as it would be evidence going to establish the elements of the crime of larceny . . ."

In discussing the defendant's contention, it should be noted he did not object to the county attorney's questions on the ground they were outside the scope of his direct examination (K. S. A. 60-243 [*b*], 60-404), nor did he argue that point at the hearing on the motion for a new trial. It should likewise be noted the defendant did not introduce any evidence which had the sole purpose of supporting his credibility, or to prove a trait of his character.

One of the principal issues of fact by reason of the defendant's plea of alibi was the identity of the person committing the offense charged. As indicated, the defendant concedes the criminal offenses he admitted on cross-examination were "similar but independent offenses" to the offense for which he was being tried, and would

have been relevant to prove a material issue in the trial if offered in the state's case in chief. (60-455.) Was such evidence admissible in the state's cross-examination of the defendant? We think it was.

The only requirement 60-455 imposes is that such evidence be relevant to prove some other material fact at issue, and it makes no provision with respect to the order of proof of such evidence. It clearly does not provide that such evidence shall be admissible only in the state's case in chief. No case has been cited and we know of none which precludes the admission of such evidence on cross-examination. The order in which competent and relevant testimony is admitted during the trial is largely within the discretion of the district court, and, unless it appears that such discretion has been abused, no error lies. (*Rheinhart v. State,* 14 Kan. *318; *Blake v. Powell,* 26 Kan. 320; *State v. Neff,* 169 Kan. 116, 218 P. 2d 248; *State v. Smit,* 184 Kan. 582, 585, 337 P. 2d 680.) In the *Neff* case it was held:

"It is always desirable that there should be an orderly presentation of proof. Rules pertaining thereto, however, are directory and not mandatory. An alteration in the prescribed customary order of proof rests in the sound judicial discretion of the trial court and the court's ruling will not be disturbed on appeal unless its exercise of discretion is abused." (Syl. ¶ 8.)

In *State v. Omo,* 199 Kan. 167, 428 P. 2d 768, the rule with respect to evidence of similar but independent offenses was said to be admissible in the district court's discretion, but it was not held such evidence was required to be received in the state's case in chief. The opinion states:

". . . We have always rejected, as prejudicial, evidence of another crime as proof that a person committed a crime upon specified occasion. But we have always admitted such evidence of prior commission of crime under proper limiting instructions when relevant to prove some other material fact including intent, plan, knowledge or identity . . ." (l. c. 173.)

We conclude that where the defendant takes the witness stand and offers evidence in his behalf, or as here, testifies in support of a plea of alibi, it is proper for the state to cross-examine him concerning similar but independent offenses when relevant to prove some material fact including those specifically enumerated in 60-455, with proper instructions as to the limited purpose for which such evidence may be considered by the jury. (*State v. Taylor,* 198 Kan. 290, 424 P. 2d 612, Syl. ¶ 2.)

The defendant contends the district court improperly instructed the jury in instruction No. 3 concerning the evidence of similar but

independent offenses. The contention assumes the evidence of the defendant's former convictions was admissible under 60-455. Counsel states that the defendant's requested instruction No. 1 was taken from an instruction approved by this court subsequent to the passage of 60-455 (*State v. Wright*, supra, p. 276), and that it should have been given to the jury.

All of the instructions given by the district court have not been abstracted, but the state contends the substance of the requested instruction was covered by the court's instruction No. 3 which advised the jury as to the limited purpose for which such evidence might be considered. In *State v. Mader*, 196 Kan. 469, 412 P. 2d 1001, it was said:

"Under these circumstances it has been held where an appellant relies upon an alleged error of the court in refusing to give a particular instruction, and only the one instruction is presented to this court for consideration, error will not be predicated upon the refusal to give such instruction, especially where it is claimed by the appellee that the substance of the instruction was in fact given in other instructions. (*State v. Murphy*, 145 Kan. 242, 65 P. 2d 342; and *State v Reilly*, 85 Kan. 175, 116 Pac. 481.)" (l. c. 476.)

For reasons heretofore discussed, we hold the fact that evidence of the defendant's commission of similar but independent offenses was admitted in evidence on his cross-examination rather than in the state's case in chief was not prejudicial to him, and the district court did not err or abuse its discretion in overruling his objections. The judgment is affirmed.

FATZER, J., dissenting: I must respectfully dissent from the court's affirmance of this case. In my opinion, the court has completely disregarded a settled rule of criminal law which was deliberately formulated and has been adhered to time after time to provide orderly procedure in the administration of criminal justice, and, more important, to insure a defendant a fair and impartial trial.

Long before and subsequent to the enactment of K. S. A. 60-455, this court has consistently held without deviation that evidence of similar but independent offenses was admissible in the discretion of the district court, and *may be received in the state's case in chief*, under proper limited instructions, when relevant to the proof of guilt of the accused for the crime with which he was charged. The rule was first adopted in *State v. Folwell*, 14 Kan. *105, and was consistently applied until the enactment of 60-455 in 1963. A few of our many cases in which the rule was discussed and applied are:

*State v. King,* 111 Kan. 140, 206 Pac. 883; *State v. Frizzell,* 132 Kan. 261, 295 Pac. 658; *State v. Palmer,* 173 Kan. 560, 251 P. 2d 225; *State v. Myrick,* 181 Kan. 1056, 317 P. 2d 485; *State v. Cushinberry,* 180 Kan. 448, 304 P. 2d 561; *State v. Stephenson,* 191 Kan. 424, 381 P. 2d 335, and cases cited in the foregoing decisions.

Following the enactment of 60-455 its provisions have been construed and applied in many decisions of this court. They were first considered in *State v. Shannon,* 194 Kan. 258, 398 P. 2d 344, cert. den. *Kelly v. Kansas,* 382 U. S. 922, 15 L. Ed. 238, 86 S. Ct. 298, and it was said:

"Proof of an independent crime is admissible in the discretion of the court, and may be received in the state's case in chief, under proper instructions, if it is relevant to the proof of the guilt of the defendant for the crime with which he is charged. To be relevant it must prove or tend to prove identity of person or crime, to prove scienter or guilty knowledge, to prove intent, to show inclination or motive, to prove plan, scheme, or system of operation and to prove malice. (*State v. Myrick,* 181 Kan. 1056, 317 P. 2d 485.) *The legislature recognized the exceptions to the general rule, as contended by defendant, in enacting chapter 303, section 60-455, Laws of 1963. The mentioned rules, exceptions and statutes were thoroughly discussed in the well-annotated opinion of State v. Wright,* 194 Kan. 271, 398 P. 2d 339 . . ." (l.c. 262.) (Emphasis supplied.)

In *State v. Wright,* 194 Kan. 271, 398 P. 2d 339, it was said that the rule of evidence stated in K. S. A. 60-455, as applied to criminal proceedings, has not materially changed the case law as it was developed in Kansas prior to the enactment of 60-455. In *State v. Lewis,* 195 Kan. 389, 405 P. 2d 796, the court adopted the foregoing statement as a rule of law. (Syl. ¶ 2.) The *Lewis* case was followed in *State v. Mader,* 196 Kan. 469, 412 P. 2d 1001, and was again followed in *State v. Taylor,* 198 Kan. 290, 424 P. 2d 612, decided March 4, 1967.

It is obvious this court has construed 60-455 as requiring the state to present evidence of similar but independent offenses committed by the accused *in its case in chief.* Our cases are to that effect and I find none to the contrary. See, *State v. Lewis,* supra; *State v. Gates,* 196 Kan. 216, 410 P. 2d 264; *State v. Poulos,* 196 Kan. 287, 411 P. 2d 689, cert. den. 385 U. S. 827, 17 L. Ed. 2d 64, 87 S. Ct. 63; *State v. Darling,* 197 Kan. 471, 419 P. 2d 836; *State v. McCarther,* 197 Kan. 279, 416 P. 2d 290, and *State v. Taylor,* supra.

This court has consistently held that in a criminal action the burden of proof is upon the state to prove beyond a reasonable

doubt the accused committed the offense charged, and that it was required to establish all of the elements of the offense in its case in chief. This is the reason advanced by this court for requiring the state to present evidence of similar but independent offenses in its case in chief. To now relax the rule and permit the state to prove a part of its case in chief through direct testimony, and then wait for the accused to take the witness stand in his own behalf and prove the rest of its case through cross-examination of the defendant violates the long-established rule of this court both before and after the enactment of 60-455 and results in manifest prejudice to the defendant. I would grant the defendant a new trial.