No. 45,400

STATE OF KANSAS, *Appellee*, v. LINVIL "RED" O'NEAL, *Appellant.*

(461 P. 2d 801)

Opinion filed December 6, 1969.

*Douglas Lancaster,* of Shawnee Mission, argued the cause and was on the brief for appellant.

*James A. Wheeler,* Assistant County Attorney, argued the cause and *Kent Frizzell,* Attorney General, and *James W. Bouska,* County Attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

FROMME, J.: Linvil "Red" O'Neal was convicted of second degree murder for shooting Jack Maples with a shotgun on October 23, 1967. The defendant waived a jury and was tried before the court. This is a direct appeal.

The defendant presents two specifications of error. The first relates

to the admission of evidence. The second concerns the sufficiency of the evidence. A summary of the trial evidence follows.

The defendant and three other persons had been staying at a farm house located in Johnson county. The men had been cutting fire-wood to sell in surrounding cities. The three other persons were Jack Maples, Basil Woods and Lura Meginn.

Basil Woods testified that there had been hard feelings between the defendant and Jack Maples. Both wanted to boss the operation. They had previously fought and on that occasion the defendant had left the farm house. He returned the following morning. On the evening Jack Maples was killed the men had completed the day's work and were in the house. Maples began peeling potatoes in the kitchen. He told the defendant to fry them as soon as they were peeled. Woods further testified he went outdoors and shortly there-after heard a shot. The defendant appeared on the front porch and advised Woods that Maples had said something he didn't like and he had picked up the gun and shot the "son of a bitch". Woods then called the sheriff.

Lura Meginn testified she saw the defendant go into the kitchen just before the shot was fired. She went into the kitchen and found Maples lying on the floor beside the table. The defendant stated, "When anybody does anything against me, they have to answer for it."

When officers Hayes and Guerian arrived they found Maples dead. He was lying on the floor face down with both hands under his stomach. The shotgun was found lying across the arms of a chair in the living room. The defendant was highly emotional and con-tinued to make voluntary statements after being advised of his constitutional rights. One of the defendant's statements was, "There's the gun, you can have it, there's the gun I shot the dirty son of a bitch with." The defendant was arrested.

Sheriff Allenbrand testified he examined the body immediately after pictures were taken at the scene of the crime. He rolled the body of Jack Maples over and observed a partially peeled potato grasped in his left hand. A paring knife was on the floor beside the body. A paper grocery sack containing peelings was on the floor beside the chair. A drain pan was on the table and contained peeled potatoes.

Dr. Bridgens performed the autopsy. He testified Jack Maples died from a gunshot wound in his chest. The wound started at the

right nipple and extended to the left in a downward course. It terminated at the lower left portion of the rib cage, at which point there were numerous small exit wounds.

Shotgun pellets had lodged in the wall below the kitchen table, eleven to twenty inches from the floor. The top of the table was twenty-nine inches from the floor. The chair was located immediately to the left of the table.

The defendant gave his version of the shooting at the trial. It was quite different. He said he and Jack Maples were sitting in the kitchen. Maples kept staring at him. The defendant started to leave the room and when he got up Maples had the shotgun. He asked Maples what he was going to do with the gun. Maples jumped up with the gun in his hands and threatened him with it. The defendant grabbed the gun. They wrestled over it. The gun discharged and Maples fell to the floor.

We will first consider the question of the sufficiency of the evidence.

The defendant points out that under our statute to constitute murder in the second degree the homicide must be committed purposely and maliciously, but without deliberation and premeditation. (K. S. A. 21-402.) He says in such case the act resulting in death must have been committed with the intention of doing some great bodily harm. There must be an intention or consciousness that the act done might reasonably cause death. (Citing *State v. Jensen,* 197 Kan. 427, 417 P. 2d 273.) He states that his testimony was the only direct evidence of what happened, *i. e.,* Jack Maples precipitated the struggle over the gun and the defendant's actions were without an intent or consciousness of doing great bodily harm to Maples. Therefore he says the evidence was insufficient to support a conviction.

The physical facts surrounding the homicide as previously set forth in this opinion, cast considerable doubt upon the defendant's story. It was for the trier of the facts to determine how Jack Maples met his death. Obviously the trier of facts was not required to accept defendant's version if there was sufficient substantial evidence to support the prosecution's theory. (See *State v. Scoggins,* 199 Kan. 108, 111, 427 P. 2d 603, and cases cited therein.)

There was evidence from which the court might reasonably find the defendant obtained the shotgun from above the door where it was kept and intentionally shot Jack Maples because of their pre-

vious quarrel. Maples was found by the officers face down on the floor. A paring knife was beside him and a potato was found tightly grasped in his left hand. The physical facts in evidence cast serious doubt upon defendant's unsupported testimony at the trial. His voluntary statements to those present when Maples was shot were damaging to his theory of the case.

The function of this court, when considering the sufficiency of circumstantial evidence to sustain a criminal conviction, is limited to ascertaining whether there was a basis in the evidence for a reasonable inference of guilt. (*State v. Patterson*, 200 Kan. 176, 434 P. 2d 808.)

We have reviewed the record and find a sound basis in the evidence for a reasonable inference that the defendant shot Jack Maples purposely and maliciously.

We turn to the remaining specification of error.

The prosecution strenuously urged the admission into evidence of a prior conviction for felonious assault which occurred in Missouri. The authenticated journal entry related to one Linville O'Neal. Several fingerprint cards were introduced in evidence to identify Linville O'Neal as being the same person as Linvil "Red" O'Neal. One of the prints was obtained from Linville O'Neal in Missouri when he was committed on the assault charge. A second print had been obtained from the defendant by the Johnson County Sheriff's office in 1954 in connection with a "DWI" charge. The third set of fingerprints was obtained when defendant was committed on the present murder charge. A fingerprint expert testified he had examined all of these sets of fingerprints and in his opinion they had been taken from Linvil "Red" O'Neal.

The defendant objected to the use of these fingerprint cards based upon what was said in *State v. Taylor*, 198 Kan. 290, 424 P. 2d 612, concerning F. B. I. "rap sheets" used in that case to prove prior convictions under the Habitual Criminal Act (K. S. A. 21-107a).

The trial court in the present case admitted the fingerprint cards for identification purposes only. Matters thereon "not relevant to the comparison made by special agent Buchanan" were excluded from consideration. These fingerprint cards were not "rap sheets" as mentioned in *Taylor*. They were not admitted to prove prior convictions. Assuming for the purpose of this inquiry that the authenticated journal entry from Missouri was admissible, these

fingerprint cards were properly used for identification purposes. We find no error in the use made of the fingerprint cards.

Objection was made to the Missouri conviction because of remoteness. The conviction was in 1939. In ruling upon the objection the trial court said:

". . . Mr. Boyle [counsel for defendant], what you have said has a lot of merit, what you have said about relevancy, having been some 29 years ago, I think however, this goes to the weight the court will give the exhibit. . . ."

The court's ruling was proper when a prior conviction is otherwise admissible under the statute. (K. S. A. 60-455.) We have held there is no hard and fast rule by which it can be determined when evidence of prior crime, if otherwise admissible, becomes irrelevant because of intervening time. The matter must be left largely to the discretion of the trial court. (*State v. Yates,* 202 Kan. 406, Syl. ¶ 5, 449 P. 2d 575.) Remoteness in time of a prior conviction, if otherwise admissible, affects generally the weight and probative value and not the admissibility of the evidence. (*State v. Fannan,* 167 Kan. 723, 207 P. 2d 1176; *State v. Poulos,* 196 Kan. 287, 411 P. 2d 689.) In *Fannan* a 17 year old conviction was held properly admitted in a trial before a jury.

In our case the trial was before the judge. When there is no jury to be misled by the evidence there is a strong presumption on appeal that the trained mind of the trial judge was not led astray by such evidence and that proper limitations on weight and probative force were applied. (See *Nauman v. Kenosha Auto Transport Co.,* 186 Kan. 305, Syl. ¶ 4, 349 P. 2d 931.)

Accordingly we hold remoteness of the prior conviction in Missouri did not render it inadmissible under the specific facts of this case and in light of all the evidence at the time it was introduced.

However, this does not mean a prior conviction is never too remote to require exclusion. In *State v. Owen,* 162 Kan. 255, 176 P. 2d 564, it was held a twenty-eight year old conviction had no probative value under the facts of that case and its admission constituted an abuse of discretion requiring a new trial.

A more serious objection to admission of this prior conviction is urged by the defendant. A prior conviction cannot be used as proof a defendant committed a later crime with which he is charged. This rule and the exception thereto are set forth in K. S. A. 60-455. Under the exception in this statute evidence that a person committed a crime on a specified .occasion may be admissible when it

is relevant to prove certain material facts bearing upon proof of certain elements of the crime, such as motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. It should be noted the statute says such evidence *may be admissible when relevant* to prove certain material facts. (See *State v. Omo,* 199 Kan. 167, 428 P. 2d 768 and *State v. Roth,* 200 Kan. 677, 682, 438 P. 2d 58.)

The determination of relevancy is a matter left to the judicial discretion of the trial judge. However, exercise of that discretion must not be abused. It must be based upon some knowledge of the facts, circumstances or nature of the prior offense.

The prosecution in the present case urged the prior conviction to prove intent to commit the present crime and to show the shooting did not occur through mistake or by accident. The prior conviction was for felonious assault. The authenticated copies of the conviction do not show the facts, circumstances or nature of that assault or the means by which it was accomplished. From the record before us we cannot say a weapon was used in the prior assault. There may or may not have been similarities in the facts of that case which would be relevant to prove intent or absence of mistake in the present case. (See *State v. Taylor,* supra; *State v. Motley,* 199 Kan. 335, 430 P. 2d 264; *State v. Owen,* supra; *State v. Mader,* 196 Kan. 469, 412 P. 2d 1001; *State v. Frizzel,* 132 Kan. 261, 295 Pac. 658.) On the basis of the record before us we conclude the prior conviction for felonious assault should not have been admitted in evidence in the present case.

However, the erroneous admission of evidence during a trial does not in every case require a reversal of a conviction.

K. S. A. 60-261 provides:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

On appeal, this court is directed to give judgment without regard to technical errors or defects which do not affect the substantial rights of the parties. (K. S. A. 62-1718).

In urging error because of the admission of this prior conviction

the defendant presents no federal constitutional question. However, the Kansas harmless error rule may be applied to federal constitutional errors when it appears the error had little, if any, likelihood of having changed the result of the trial and when the court is able to declare such a belief beyond a reasonable doubt. (*State v. Fleury,* 203 Kan. 888, 457 P. 2d 44.) In *Fleury* we cited strong federal authority supporting our harmless error rule. (See *Chapman v. California,* 386 U. S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 and other federal cases cited therein.)

What are some of the circumstances and factors in the present case bearing upon the effect this prior conviction may have had upon the result of the trial? The trial was before the district judge who indicated in the record that this twenty-nine year old conviction was entitled to no more than limited weight and probative force. There was no jury to be led astray by considering this evidence. The trial judge limited its force to the single question of intent and lack of mistake on the part of the defendant. The physical facts in evidence had nullified defendant's version of the shooting for all intents and purposes. Evidence bearing upon the question of intent and lack of mistake was strong and convincing without resort to the prior conviction. Evidence of this prior conviction was superfluous and is a prime example of "over-trying" the case by the prosecution.

Under the circumstances of this case the erroneous admission of the prior conviction could have had little, if any, likelihood of changing the result of the trial. Its admission in this case was harmless error beyond a reasonable doubt.

The judgment is affirmed.

SCHROEDER, J., dissenting: In my opinion the prior conviction of the appellant for an offense committed twenty-eight years prior to the trial herein was erroneously admitted in evidence to prove the element of intent required *of the offense charged in the information —murder in the first degree.* It is inconceivable to me that the prior conviction had any probative value whatever and it should have been excluded from evidence. (*State v. Owen,* 162 Kan. 255, 176 P. 2d 564.) The court concedes the admission of this prior conviction into evidence was error, but it regards the error as technical and insufficient to require a reversal.

In the instant case the material issue before the trial court was *the existence of the requisite intent.* The admission of the prior

conviction went to this very issue. There were no independent eye witnesses to the shooting and the appellant was claiming self defense, in substance.

The rules of evidence in our new code of civil procedure are applicable to the trial of criminal cases. Pursuant to the new code Supreme Court Rule No. 116 (201 Kan. xxxi) was adopted. It provides in part:

". . . If evidence was admitted over proper objections, and in his reasons for the decision the judge does not state that such evidence, specifying the same with particularity, was not considered, then it shall be presumed in all subsequent proceedings that the evidence was considered by the judge and did enter into his decision."

Here the appellant objected to the admission of the 1939 Missouri conviction in evidence, and it must be presumed the trial judge considered the evidence and that it entered into his decision.

It is respectfully submitted the judgment of the trial court should be reversed and a new trial granted.

FONTRON, J., dissenting: I agree that the admission of the defendant's prior conviction was error. However, I am unable to say it was harmless error.

Under the circumstances of this case the presumption must be indulged that the former conviction, admitted in error, was considered by the court and entered into its decision. (See Rule 116, 201 Kan. xxxi) In view of this presumption, and in view of the circumstantial nature of the evidence, except defendant's own testimony which was exculpatory in character, it would be presumptuous, in my view, for us to say the error was innocuous.

Accordingly, I would reverse the judgment and direct a new trial.